UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | |
| ) | |
| TURNER CORNELL MOONEYHAM ) | CRIMINAL NO. SA-07-CR-164-XR |
| (1) ) | |
| ) | |
| ) | |

### ORDER

On this date, the Court considered Defendant's motion to suppress (docket no. 15) and Defendant's brief in support of the motion to suppress (docket no. 30). Defendant argues that a Natalia Police Officer exceeded the scope of a traffic stop by illegally detaining Defendant after the Officer's investigation of the initial offense was completed. Defendant further argues that his statements made during questioning by the Officer during this extension of the traffic stop do not constitute consent to search. Finally, Defendant argues that inevitable discovery does not apply. Defendant seeks to suppress the discovery of five illegal aliens hidden in his vehicle, which serves as the basis for his indictment.

### FINDINGS OF FACT

1.  On February 22, 2007, Defendant Turner Cornell Mooneyham was driving a Pace Arrow motor home northbound on Interstate 35. (p. 5).

2.  At 1:11 p.m. on February 22, 2007, Waymon Morgan, a police officer with the Natalia Police Department, observed the Pace Arrow motor home and noticed an apparently invalid inspection sticker and a cracked windshield. Officer Morgan stopped the vehicle at about the 128 northbound mile marker. (p.2, 5-6, 55-56).

3.  Defendant exited the motor home from the passenger side. Officer Morgan advised Defendant that the inspection sticker did not look proper. Morgan then asked for

        Defendant's driver's license and registration. Defendant provided Officer Morgan his license and registration, as well as a concealed handgun license. (p.6-8, 56).

4. Officer Morgan asked Defendant about the inspection sticker. Defendant acknowledged he made the inspection sticker and that it was fictitious. Officer Morgan removed the sticker from the vehicle. (p. 6-7, 47, 56).

5. Officer Morgan returned to his vehicle to retrieve a ticket. Morgan's partner, Officer Martinez informed him that they were out of blank tickets. Morgan initially told Martinez to write Defendant a warning and let him go. Then, Officer Morgan called dispatch to run a warrant check, driver's license check and a criminal history on Defendant. Officer Morgan also called another police unit to the location. Officer Langford arrived in the second police vehicle. Officer Morgan asked Langford for a ticket and stated that he wanted to give Defendant a citation for this offense. (p.8, 57).

6. While Officer Morgan waited on the background checks to run, he observed what he perceived to be suspicious behavior by Mooneyham. Morgan described Defendant's behavior as acting nervously and trying to prevent the officers from realizing he was nervous by attempting to act lackadaisical. (p. 8).

7. Officer Morgan at that point began to suspect further criminal activity on the part of Defendant because of his body language and the fact Defendant had manufactured a fictitious inspection sticker. (p. 8, 57).

8. Officer Morgan was informed by dispatch that the warrant and driver's license checks were clear. Dispatch also informed Morgan that Defendant had a criminal history including DWI's and moving violations. Morgan then asked dispatch to run a concealed handgun license check on Defendant. Officer Morgan approached Defendant's vehicle again after having run the background checks but before the concealed handgun check was finished. (p. 15).

9. Officer Morgan then began to question Defendant about his concealed handgun license and criminal history. Dispatch reported to Morgan that the concealed handgun license was valid and current. Shortly thereafter, Officer Morgan, noting Defendant admitted making a fictitious inspection sticker, asked Defendant "what else are you willing to do?" He also asked Defendant if he had weapons or drugs in the vehicle. Defendant denied possessing weapons or drugs. Officer Morgan then asked permission to search Defendant's vehicle. While Morgan was questioning Defendant, Officer Martinez approached carrying the book of citations. Morgan asked Defendant for permission to search a total of three times during his ongoing questioning. Defendant denied the Officer permission to search his vehicle and asked Officer Morgan, "Why don't you just get a dog?" (p. 9).

10. Officer Morgan left the scene to get the canine. Officer Martinez issued Defendant a citation. The other police unit stayed at the scene with Defendant. (p. 10).

11. Once Officer Morgan returned, he ran the dog in a search of the exterior of the vehicle. It gave a positive response to the right rear quarter panel of Defendant's vehicle. (p. 10).

12. The canine is trained to detect a variety of drugs and to detect people. (p. 10).

13. After the dog alerted Officer Morgan to the vehicle, Morgan returned it to his patrol car. He then notified Defendant that he would search the motor home because the dog had given a positive response. (p. 11).

14. Officer Mike Martinez retrieved the motor home keys and then Martinez opened the compartments on the outside of the vehicle. (p. 10-11).

15. Officer Morgan entered Defendant's vehicle and began searching. Morgan opened a closet door in the motor home and saw a person's leg underneath the closet floor. Morgan exited the vehicle and asked other officers to put Defendant into custody. Morgan and two other officers resumed searching the vehicle and attempted to retrieve the individual Morgan had seen from the under the closet. (p. 11-12).

16. The other officers in the motor home succeeded in getting a man out from under the closet. The man told them he was being smuggled illegally into the United States. (p. 13).

17. Officer Morgan also discovered a male child, a female child, a male adult, and a female adult underneath a bed in the motor home, all of whom were also aliens. (p. 13-14).

## CONCLUSIONS OF LAW

1. Any finding of fact herein above which also constitutes a conclusion of law is adopted as a conclusion of law. Any conclusion of law herein made which also constitutes a finding of fact is hereby adopted as a finding of fact.

2. The primary law enforcement purposes for making a traffic stop of a moving vehicle on a public highway are: (1) to verify that a violation of the traffic laws has occurred or is occurring and, (2) to provide for the issuance of an appropriate ticket or citation charging such traffic violation or make an arrest of the driver based upon such violation. *U.S. v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir.2005), *cert. denied*, 546 U.S. 1222 (2006). Thus, the primary law enforcement purposes of investigating the inspection sticker and cracked windshield justified the initial detention.

3. "Detention, however, may last no longer than required to effect the purpose of the stop. If all computer checks come back clean, then as a general matter reasonable suspicion disappears, and there is no legitimate reason for extending the stop." *U.S. v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006). Morgan first ran several checks on the Defendant, which came back clear. At that point Morgan is required to cite, arrest or warn unless reasonable suspicion of another

        crime exists. *See also Lopez-Moreno*, 420 F.3d at 431. ("once all *relevant* computer checks have come back clean, there is no more reasonable suspicion . . . .")(citing *United States v. Brigham,* 382 F.3d 500, 510 (5th Cir. 2004))(emphasis added).

4.    The Government argues that Officer Morgan had reasonable suspicion to extend the detention. The Fifth Circuit provided the standard for reasonable suspicion in *U.S. v. Hernandez,* 477 F.3d 210, 213 (5th Cir. 2007)("Reasonable suspicion requires more than a mere an unparticularized hunch, but considerably less than proof by a preponderance of the evidence . . . . No single factor is determinative; the totality of the particular circumstances known to the agents are examined when evaluating the reasonableness of a roving border patrol stop.") (internal citations omitted). The Fifth Circuit also applied the totality of circumstances consideration to a traffic stop. *Jenson*, 462 F.3d at 404-05 (5th Cir. 2006)(holding that, based on the totality of circumstances, nervous behavior, a delay in pulling over, and inconsistent answers by the occupants of a vehicle were not enough to constitute reasonable suspicion in a stop for speeding). The Fifth Circuit also requires that reasonable suspicion be based on specific and articulable facts. *U.S. v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

5.    Officer Morgan stated he had reasonable suspicion because of the nervous behavior of Defendant and because of the invalid inspection sticker. These were the only articulable facts provided as a basis for reasonable suspicion. Nervousness alone is not enough. *See Jenson*, 462 F.3d at 404. Nor does the inspection sticker violation, taken together with the Defendant's nervous behavior provide particularized reasonable suspicion that a crime is being committed*,* other than the inspection sticker violation itself. Therefore extending the detention of the Defendant was unlawful.

6.    It was during this illegally extended detention that further questioning occurred, including the question, "What else are you willing to do?" After denying permission to search, the Defendant finally asked the Officer, "Why don't you just get a dog?"

7.    The Defendant challenges the evidence obtained after this search because the consent was neither a voluntary act nor an independent act of free will. The Government argues that this consent attenuates the taint of the illegal detention. The admissibility of the challenged evidence resulting from the Defendant's consent to the dog search turns on a two-pronged inquiry: whether the consent was voluntarily given and whether it was an independent act of free will. The burden of showing admissibility rests on the government. *See Chavez-Villarreal*, 3 F.3d at 127-28. The factors to consider in deciding whether the consent was an independent act of free will are: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. *Id.* at 128. The factors to consider in determining the voluntariness of the consent are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and

|   |   |
|---|---|
|   | intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Id*. at 128 n. 15. |
| 8. | If either the voluntariness prong or the independent act prong of the admissibility test is not met, the evidence must be suppressed. *See Jenson*, 462 F.3d at 407 (5th Cir. 2006) (holding that evidence should be suppressed when the independent act prong is not met and where the voluntary act prong was met). |
| 9. | The consent was not voluntary. Defendant was not voluntarily in custody. At the time of the questioning during the extended detention, Defendant could not have been reasonably expected to believe he was free to leave. The police procedures were somewhat coercive. Officer Morgan asked Defendant for consent to search three times after the initial checks came back clear. While Defendant was generally cooperative (he admitted the false inspection sticker), he twice denied permission to search. |
| 10. | The Government argues that the evidence should nevertheless be admitted because Texas law authorized Officer Morgan to arrest Defendant and impound the vehicle. After a lawful arrest, the impounded vehicle may be inventoried. In this case, however, there was no lawful arrest. The Fifth Circuit previously held that a detention was illegally extended where the defendant was stopped for traveling too close. *United States v. Dortch*, 199 F.3d 193, 195 (5th Cir. 1999). Traveling too close is also an arrestable offense according to Texas criminal law.[1]  Although the *Dortch* court did not explicitly address this particular issue, it did hold that the extention of the detention was unlawful despite the fact that traveling too close was an arrestable offense. |

## CONCLUSION

Defendant's motion to suppress is GRANTED (docket no. 15).

SIGNED this 10th day of August, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[1] A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. TEXAS CODE OF CRIMINAL PROCEDURE § 14.01(b). The Fifth Circuit has previously noted this feature of Texas criminal law. *United States v. Hernandez*, 901 F.2d 1217, 1219-20 (5th Cir. 1990).